■ In the Matter of ARCHER W., Respondent, v COMMISSIONER OF SOCIAL SERVICES et al., Respondents, and MELANIE P. et al., Intervenors-Appellants.—In a child custody proceeding pursuant to Family Court Act article 6, the intervenor foster parents appeal from (1) an order of the Family Court, Kings County (Deutsch, J.), dated April 12, 1989, which, after a hearing, awarded custody of the child to the petitioner, and (2) a final order of the same court, dated May 10, 1989, entered upon the order dated April 12, 1989.

Ordered that the appeal from the order dated April 12, 1989, is dismissed (see, Family Ct Act § 1112), without costs or disbursements, and it is further,

Ordered that the final order dated May 10, 1989, is affirmed, without costs or disbursements.

The child in this case, now four years old, was born out of wedlock on April 20, 1987. The Department of Social Services commenced neglect proceedings against the natural mother and a finding of neglect was made, based upon her admission that she used cocaine during pregnancy. Pursuant to a dispositional order dated August 4, 1987, the child was placed with the intervenor foster parents. The natural mother subsequently acknowledged that Archer W. was the father of the child, and an order of filiation was entered on September 29, 1988.

Archer W. instituted this custody proceeding, and the Family Court granted a final custody order in his favor on December 19, 1988. The foster parents subsequently moved to intervene and to reargue the question of custody. The Family Court granted the foster parents' motion, and conducted a hearing to redetermine custody. By order dated April 12, 1989, the Family Court found that the foster parents had failed to prove that the natural father was unfit, or that he was guilty of abandonment or persistent neglect. Accordingly, the Family Court granted a final order of custody to the natural father on May 10, 1989. We affirm.

It is well established that a natural parent has a claim of custody of his or her child, superior to that of all others, unless the parent has abandoned that right or is proved unfit to assume the duties and privileges of parenthood *(People ex rel. Kropp v Shepsky,* 305 NY 465, 468; *see, Matter of Male Infant L.,* 61 NY2d 420, 426). In the absence of "surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances" *(Matter of Bennett v Jeffreys,* 40 NY2d 543, 544), a parent may not be denied custody. Further, a court may inquire into the best interests of the child and order a custodial disposition on these grounds only upon a finding of "extraordinary circumstances" which would drastically affect the welfare of the child *(see, Matter of Bennett v Jeffreys, supra,* at 549; *see also, Matter of Male Infant L., supra,* at 427; *Matter of Alfredo S.,* 172 AD2d 528).

Upon our review of the record, we find that the foster parents have not met their burden of demonstrating the existence of "extraordinary circumstances", and thus a best interests hearing is unwarranted *(see, Matter of Darlene T.,* 28 NY2d 391, 394; *Matter of Alfredo S., supra).* Although the father did not commence custody proceedings until approximately one year after the child's birth, he testified that he visited the hospital almost every day when the child was first born, and that he advised the child's case worker that he was

the father. Further, during that period of time, he regularly visited the child on a bi-monthly basis, and his visits continued on a weekly basis until he obtained custody of the child. These factors, considered together with his financial circumstances at the time, and his hope that the natural mother would successfully complete her drug rehabilitation program, support the Family Court's finding that the father neither neglected nor abandoned the child. The testimony of the father and the case worker assigned to the child's case in March 1988 indicates that the relationship with the child was a loving and caring one, and that the father made adequate plans to provide for the child once in his care.

Moreover, the record does not support the foster parents' contention that the father's companion of 10 years would not be a caring mother to the child. The testimony of the father and the case worker who interviewed her indicates that she is willing to undertake the care of the child. Harwood, J. P., Balletta, Rosenblatt and O'Brien, JJ., concur.