■ In the Matter of ALICIA GRAVINA et al. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant. In the Matter of JUAN RODRIGUEZ, JR. COMMISSIONER OF SOCIAL SERVICES OF CITY OF NEW YORK, Appellant. — Orders of the Family Court, New York County (Dembitz, J.), dated January 22, 1982 (in the case of Gravina and Robinson) and as amended June 3, 1982 (in the case of Rodriguez), reversed, on the law, and the matters remanded for further proceedings, without costs. These cases involve attempts to formalize (Gravina/Robinson) and extend (Rodriguez) *de facto* foster care relationships. Each of the children resides with a relative, either because of the death or disappearance of the parent or at the parent's request. Such relatives are entitled to public assistance for providing foster care where there has been compliance with the pertinent provisions of the Social Services Law. In order to obtain such benefits the foster care arrangements must be preceded by a voluntary placement agreement (VPA) in conformity with section 384-a of the Social Services Law, whereby the care and custody of the child is transferred to an authorized agency, which in turn formally places the child with a foster parent, who may be a relative. This procedure, as outlined in subdivision 1 of section 384-a, must conform with subdivision (1) of section 358-a, which requires that the local agency must initiate a judicial proceeding for approval of the VPA within "thirty days following removal of the child from the home". In all of the 23 cases represented by the Gravina/Robinson appeal, the

execution of the voluntary placement agreement did not take place until well after 30 days following *de facto* placement. The children had been placed with relatives on a voluntary basis without agency or court approval. The Rodriguez appeal differs only in that it involves periodic review of an existing kinship foster relationship under section 392 of the Social Services Law, in connection with which the custodian, the child's maternal grandmother, sought the additional foster care assistance available when there has been compliance with the procedures authorized by section 358-a and subdivision 1 of section 384-a of the Social Services Law. The New York City Commissioner of Social Services appeals in the Gravina/Robinson cases from the Family Court's denial of his petitions for approval of the late-filed voluntary placement instruments. In Rodriguez, the commissioner appeals from the court's denial of his petition for continuation of existing foster care. One of the bases of the denial of these petitions was their untimeliness. The voluntary placement agreements were patently executed and filed long after the initiation of the kinship foster care relationship, much later than the 30 days prescribed by the statute. But the salutary purpose of section 358-a is clearly to expedite the placement of abandoned or neglected children in a proper foster care setting. The acceptance of these children into the homes of relatives is consistent with that purpose. The fact that these relatives may have been unaware of the effect of the failure to initiate formal proceedings within 30 days is understandable. Moreover, the fact that these custodial relatives failed to cause the initiation of such proceedings within the 30 days may be taken as an indication of the sincerity of such relatives in wanting to care for the children, without imputing an ulterior motive in connection with public assistance. It would thus be inconsistent with the legislative intent to deny available public assistance for which a need can be proven, simply because the kinship foster parent was not aware of the existence of such assistance and the procedures necessary to obtain it at the time the child was accepted into the home. The Family Court assumed that the sole purpose of the belated efforts to obtain formal foster care status in these cases was to secure financial benefit regardless of need. The statute should not be read so restrictively. The question of need is a proper one for determination by the commissioner. The issue for the Family Court is whether the best interests of the child require placement outside the care and custody of the natural parent. The Family Court opined that section 358-a was not intended to ratify past private arrangements between relatives, implying that the favoring of such kinship foster relationships might be at the sacrifice of the best interests of the child in determining the best possible foster care setting. The Family Court further opined that inasmuch as foster care is intended to lead toward eventual permanent placement in the form of adoption, if not return to the natural parent, such a foster relationship with a relative might be confusing and distressing to the child. But the Supreme Court has ruled that publicly assisted foster care may not be denied solely because the foster parents are related to the child (*Miller v Youakim,* 440 US 125). Indeed, the determination of the Family Court upon periodic review of foster care status, in light of the best interests of the child, should be confined to one of four options: (a) continuation of the existing foster care, (b) return of a temporarily placed child to his parent, (c) freeing of a child from the foster family for adoption, and (d) directing of adoption in the foster family home itself (Social Services Law, § 392, subd 7). In denying the petition in the Rodriguez appeal, the Family Court gave no direction with respect to these options, despite the fact that these were the only options available to it under the statute. CPLR 4211, 4212 and 4213 (subd [b]), under which the Family Court Judge purported to act, are not applicable in the face of the provisions of subdivision 7 of section

392 of the Social Services Law (see section 165 of the Family Court Act). In rejecting this petition and the Gravina/Robinson petitions, the Family Court ignored the realities of the situation on the theory that the delay in formalizing the foster care status demonstrated that it was sought solely in order to become eligible for increased public assistance without a showing of a genuine need for such assistance. This was not the issue before the court. The question was the best interests of the children, whether foster care was appropriate under the circumstances. The entire structure of the foster care program is to monitor the placement of children in foster homes. A literal reading of the statute should not override this purpose. By requiring judicial approval the statute extends the scrutiny of the courts over placements which may be unnecessary or not in the child's best interests. The court should not ignore voluntary placements which would otherwise go unmonitored solely because they are kinship placements brought to the attention of the court on a belated basis. In Rodriguez the Family Court Judge found "[t]he child's interests can best be served, consistently with the policy of section 392, by remaining with his present caretaker". The present caretaker is the grandmother who has been his caretaker ever since his foster care status began. The court concluded that such care arrangements should continue, but without court-approved foster care status, thus precluding the controls built into the foster care system and the additional financial benefits of which the court disapproved. Plainly this conclusion did not serve the best interests of the child. These cases should be remanded to the Family Court for determination on the merits based on the best interests of the children. Concur — Sullivan, J. P., Ross, Bloom and Fein, JJ.

Silverman, J., dissents in a memorandum as follows: This case involves a question of widespread public importance, affecting not only the two particular cases mentioned in the caption, but apparently 21 other identifiable cases, and presumably many others. The majority's determination may well be correct. But it is made on essentially an ex parte basis, with both the involved foster parents and the Commissioner of Social Services urging reversal. All parties are described as "Petitioner-Appellant." There is no respondent and no brief for affirmance. On so important a matter, we should have both sides of the argument presented. I think we should appoint an attorney as *amicus curiae* to present a brief for affirmance if he responsibly can do so.