OPINION OF THE COURT
Phylus Gangel-Jacob, J.
Pursuant to CPLR article 78, petitioner Shirley Carter, paternal grandmother of the minor child Javette Alexander (Javette), seeks a judgment vacating the April 3, 1992 determination of the Commissioner of the New York State Department of Social Services (NYS-DSS) to the extent it disallowed foster care payments to petitioner for Javette from May 2, 1986 and forward. After a fair hearing payments were found required for the period April 3, 1984 through May 1, 1986 and the New York City Department of Social Services (NYC-DSS) was directed to comply immediately. The petitioner seeks a directive from this court ordering respondents to issue a grant of foster care payments from May 2, 1986 to the present as well as attorney’s fees, costs and disbursements. NYS-DSS has answered the petition denying its merit and has annexed a copy of the transcript, exhibits and decision of the fair hearing.
Javette is the daughter of Eileen Alexander and Larry Daniel Carter, petitioner’s son. It appears that these two persons were never married to each other. Both were chronic intravenous drug users and alcoholics. Javette was born drug addicted on May 17, 1981. At the time of her birth petitioner, who is Javette’s grandmother, contacted the Child Welfare Administration, a component of respondent NYC-DSS and a caseworker (Ms. White) had petitioner, Eileen Alexander and Larry Carter sign "a letter”. No copy of the letter is offered and no account of its contents is furnished. Apparently pursuant to this letter, Ms. White called the social worker at the hospital where Javette was born and told her to release the child to petitioner. Petitioner has cared for Javette from that time to the present. Angel Guardian, a private foster care agency, visited petitioner’s home approximately once a month until 1986.
Javette’s sister Yolanda was born to the same parents on February 28, 1984, also addicted to drugs. At that time, *788 respondent NYC-DSS brought a neglect petition on behalf of both children against both parents, pursuant to article 10 of the Family Court Act. In that petition, it was stated that the children resided with Eileen Alexander and that she was legally responsible for them. In fact, not only was Javette then living with her grandmother, but Yolanda had been placed at birth by respondent NYC-DSS with her cousin Lola Marcus. The Family Court Act article 10 petition was granted and custody was awarded to the Commissioner of Social Services for a period of 18 months which expired May 1, 1986.
Both children remained in their respective relatives’ homes. On October 1, 1985 during the period of NYC-DSS’s custody of her children, Eileen Alexander died as a consequence of chronic intravenous drug use. When the custody period had elapsed, no further action was taken by NYC-DSS. No petition to extend the period was filed and no effort was made to appoint a guardian of the children. Lola Marcus had been certified as a foster home and she received foster care payments on Yolanda’s account for the period of NYC-DSS’s custody and thereafter until Yolanda died on February 19, 1987 of meningitis, a result of her congenital drug impairment. Larry Carter, the children’s father, died on May 30, 1988 of cryptococcal meningitis also as a result of drug addiction.
Petitioner has continued to care for Javette in a household that includes petitioner’s other son Warren, a minor, and her daughter, together with the daughter’s three minor children. Petitioner lives on public assistance. Javette has received Social Security payments since the death of her mother. Petitioner claims that she does not receive public assistance for Javette, although on the fair hearing questionnaire it is stated that she does. This is borne out to some degree by a copy of a letter from the New York City Human Resources Administration, dated February 14, 1985 which attempts to explain the custody situation of Javette to petitioner’s Income Maintenance Center. She never received foster care payments On account of Javette.
In 1991, petitioner requested a fair hearing from respondent NYS-DSS to protest NYC-DSS’s refusal to pay her foster care payments. On April 3, 1992, NYS-DSS determined that petitioner was entitled to foster care payments from April 13, 1984 through May 1, 1986. Reasoning that with the lapse of the Family Court placement order petitioner’s foster parent *789 status had also lapsed, respondent denied payments for any period thereafter.
Pursuant to the Social Services Law, the Commissioner of NYC-DSS may obtain custody or guardianship of a child by means of (1) a voluntary surrender of the child by written instrument (Social Services Law § 384), (2) a voluntary transfer of the care and custody of the child (Social Services Law § 384-a), or (3) a court order pursuant to the abuse or neglect proceeding provisions of Family Court Act article 10 (Social Services Law § 384-b). Where custody of a child is transferred to the Commissioner pursuant to a court order adjudicating neglect, the local district has authority to place the child in a foster home and provide foster care payments for the care of the child (Social Services Law § 374).
Such foster care home may be that of a relative of the child who may offer to serve for free or who may take advantage of the simplified kinship foster parent certification program of 18 NYCRR 444.8 (Family Ct Act § 1017). Such person, on complying with this program, would be entitled to foster care payments. Family Court Act § 1017 was added by Laws of 1989 (ch 744, § 1). While this section was not in effect at the time of the Family Court order herein, it appears to have formalized NYC-DSS’s then working placement policy (see, Besharov, 1989 Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1055, 1993 Pocket Part, at 188).
A court order remanding a child to the care and custody of the Commissioner of NYC-DSS has an initial duration of 12 months (Family Ct Act § 1055 [b] [i]).* Thereafter successive extensions for additional periods of one year may be granted after a mandatory hearing held on petition therefor concerning the need for extending or continuing the placement (Family Ct Act § 1055 [b] [ii]).
Social Services Law § 392 (2) mandates the authorized agency to petition to review a child’s foster care status in Family Court after it has been determined that a child will remain in foster care for a continuous period of a year. To ensure compliance with Social Services Law § 392 and advance the best interests of foster children, the Legislature enacted Social Services Law § 153-d, which denies reimbursement from the State to local districts and child care agencies *790 for the cost of foster care and maintenance and preventive services, which fail to review the placement of a foster child. The denial of reimbursement from the State does not, however, relieve the district or child care agency from its obligation to provide foster care or preventive services for the child.
A child’s commitment to the care and custody of the State pursuant to court order cannot be extended without first holding a hearing (Family Ct Act § 1055; Matter of Susan F., 59 AD2d 783 [2d Dept 1977]; Matter of Changa W., 123 AD2d 435 [2d Dept 1986]). It is uncontroverted that when the Family Court order expired on May 2, 1986, NYC-DSS took no steps to extend Javette’s placement or even to review her situation. The fact that NYC-DSS failed Javette in that it did not file a mandatory petition in Family Court for review of her placement does not in itself automatically extend the placement order, and once the placement order expires custody reverts to the parent (Matter of Susan F., supra).
NYC-DSS argues that in this case it ceased to have custody of Javette when the placement order lapsed and it therefore ceased to be responsible for foster care payments. This argument ignores several factors in this case not the least of which is NYC-DSS’s statutory mandate to care for and provide for the future of needy and abandoned children (see, Social Services Law §§ 374, 384-b, 392, 398). According to the statement of petitioner, not specifically denied by respondents, Javette was first placed with Ms. Carter not only with respondent’s blessing but on its authority, with the consent of Javette’s parents. There is no showing that Javette’s parents ever ceded guardianship to Ms. Carter. When NYC-DSS petitioned for custody of the two children, it stated clearly in the petition that legal responsibility and custody were in Eileen Alexander, the mother. Ms. Alexander died during the period of DSS’s custody. No one appears to have applied for appointment of a guardian for the children, pursuant to SCPA 1704. While Javette’s father was still alive at the time the Family Court order lapsed, it is undisputed that he took no action to gain custody of his daughter. Even assuming that as an unwed father he had claim to her custody (see, Domestic Relations Law § 81) such right from DSS’s point of view could not be automatic since it had claimed that Eileen Alexander had sole legal responsibility for the child. This is echoed in Social Services Law § 384 (1) (d) concerning the surrender of children that on the death of an unwed mother the legal guardian, not necessarily the father, is the party with the power to effect the transfer surrender. At this point, Javette was to all *791 intents and purposes an abandoned child, jurisdiction over whom rests in DSS (see, Matter of Caseres, 67 AD2d 630 [1st Dept 1979]). On the lapse of the placement order, custody here reverted to no one. It did not revert to Ms. Carter since as far as one can tell from the record she never had legal custody. Moreover, the cases that state so emphatically that placement orders cannot be amended nunc pro tunc do not necessarily permit physical custody of a child to revert to the parent without a hearing (Matter of Lyndell C. R., 102 Misc 2d 723 [Fam Ct, NY County 1980]; see, Matter of Wayne T. D., 104 Misc 2d 314 [Fam Ct, Putnam County 1980]). In such cases, there is no suggestion that between the expiration of the order and final removal of the children from foster care, the foster parents unbeknownst to them pass from the status of paid caregivers to that of volunteers.
NYC-DSS has a responsibility both to Javette to plan for her future and to its foster parents as persons with whom it is in a contractual relationship. It cannot ignore its responsibility to Javette pending appointment of a permanent guardian and it cannot use its own careless inattention as a means to transform petitioner Carter from a foster parent into a volunteer. While some close relatives may serve as foster parents for free (see, Family Ct Act § 1017 [1] [b]), there is no indication in the record what petitioner’s status was intended to be at the time the placement order was signed, but if NYS-DSS has decided in its April 3, 1992 order that she was at that time a foster parent, then she must remain one for all purposes until Javette either ceases to live with her or becomes her legal responsibility. Petitioner’s status is indistinguishable from that of Lola Marcus, the foster parent of Yolanda, who continued receiving foster care payments up to the time of Yolanda’s death, 10 months after expiration of her Family Court placement order.
Accordingly, petitioner’s application is granted and the matter is remanded to respondents with the direction that foster care payments be awarded on Javette’s behalf from May 2, 1986 forward, as well as the prior period as to which respondents concede payment is due. Javette’s case is also remanded to respondent NYC-DSS for review de novo for proceedings concerning Javette’s legal status that should have been conducted upon her parents’ deaths and any remedy granted will be deemed retroactive (see, Matter of Caseres, supra).

 At the time Javette was placed by court order, the initial period under Family Court Act § 1055 (b) (i) was 18 months. This provision of the statute was changed by Laws of 1989 (ch 458, § 2).