[634 NYS2d 675]

In the Matter of the H./M. Children, Infants. Gina H., Respondent; Commissioner of Social Services of City of New York, Appellant.

First Department, November 21, 1995

APPEARANCES OF COUNSEL

*Marcia Egger* of counsel *(Jane M. Spinak, Law Guardian),* for H. M. Children.

*A. Orli Spanier* of counsel *(Alan G. Krams* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for appellant.

## OPINION OF THE COURT

SULLIVAN, J. P.

This is an appeal from the dismissal of petitions seeking the extension of foster care placement for two children, Tyisha H., born June 3, 1982, and Raymond M., born June 19, 1986.

The children were in foster care as a result of neglect petitions filed on January 14, 1993 against respondent, their mother, alleging the absence of food in the home and the fact that the children were sleeping on unsanitary linens; that respondent had no source of income because her public assistance grant had been terminated for failure to attend recertification interviews; that the police had reported that respondent abused crack; that, according to relatives, respondent sold the children's clothing and there was no furniture in the home. On the same day the petitions were filed, the children were removed from respondent's care and remanded to the Commissioner of Social Services, who placed them with Tyisha's paternal grandmother, Betty C.

After a March 24, 1993 fact-finding hearing, at which respondent defaulted in appearing, Family Court made a finding of neglect based on the petitions' allegations, that respondent had rented space in her apartment to heroin users, had admitted cocaine use and, after being referred to a drug treatment program, had failed to enroll therein. Family Court also found that Tyisha had been absent from school for two months.

Respondent also defaulted in appearing at the dispositional hearing, at the conclusion of which the court placed the children with the Commissioner for up to 12 months. An Investigation and Report prepared by the Child Welfare Administration (CWA) recommended that Tyisha, depressed and threatening to run away from Betty C.'s home, receive counseling.

The Commissioner, on or about June 6, 1994, filed petitions requesting an extension of placement for an additional 12 months, effective June 8, 1994. In support of the petitions it was alleged that, while the permanency plan was still to return the children to respondent, she was not yet ready to care for them. She was not at all involved in planning for their care or return, had failed to enter a drug rehabilitation program, and had not visited the children since their placement despite the fact that 11-year-old Tyisha, who was having difficulty adjusting, telephoned her every day. In an affidavit, the CWA caseworker advised the court that Tyisha had requested that she be sent to live with her maternal grandmother in Colorado and that approval of such a placement for both children, effective June 29, 1994, pursuant to the Interstate Compact on the Placement of Children (Social Services Law § 374-a [1]), had been obtained.

At a July 11, 1994 hearing on the extension of placement, at which respondent once more defaulted, the children's Law Guardian advised the court that they had been moved, pursuant to the Interstate Compact, to the maternal grandmother's home in Colorado in June 1994. The CWA caseworker told the court that while the permanency goal was still to return the children to respondent, the goal would be changed if she failed to get "herself together" during the period of extension. Hearing of these developments, the court discharged the children to their maternal grandmother with the observation that "if [respondent] gets herself together, she'll do what she has to do." This Court stayed the children's discharge from the Commissioner's custody pending determination of the appeal. Since the discharge of the children to the care of their grandmother in Colorado and relinquishment of this State's jurisdiction over them violated the provisions of the Interstate Compact on the Placement of Children (Social Services Law § 374-a [1]), we reverse and reinstate the petitions.

The Interstate Compact is intended to promote cooperation among the States in the placement of children out of State to assure that such children are placed in a suitable environment and provided with the most appropriate care available. (Social

Services Law § 374-a [1], art I.) The financial burden for achieving such a goal remains with the sending State. (*Id.*, art V [a].) To that end, the Compact provides that the State which places a child in out-of-State foster care must retain jurisdiction "sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child" until one of the following events occurs: "the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state." (*Id.*, art V [a].) Thus, the statutory scheme serves a twofold purpose: to assure that the placement will be in the child's best interests and to prevent the States from exporting their foster care responsibilities to other States.

In the instant case, it is clear that none of the circumstances that trigger a termination of this State's jurisdiction over these children has occurred. Neither of the children has been adopted, reached the age of majority or become self-supporting. Nor has the appropriate authority in Colorado, the receiving State, even been asked to acquiesce in, much less agree to, New York's terminating placement and responsibility for the children. Thus, New York must not only continue to monitor the appropriateness of the Colorado placement but must also bear the financial responsibility of the children's support and maintenance while they remain in the out-of-State placement with their grandmother.

The situation here is controlled by the Court of Appeals recent decision in *Matter of Shaida W.* (85 NY2d 453) where the Commissioner of Social Services of the City of New York, pursuant to the Interstate Compact agreement, authorized children in its care and custody to remain in foster care with their maternal grandmother, who relocated to another State. The Court held that under the provisions of the Compact the Department of Social Services was the "sending agency" as defined in section 374-a (1), article II (b), and must retain financial and planning responsibility until the appropriate authority in the receiving State consents to the child's discharge or one of the other events terminating the sending State's jurisdiction, as enumerated in section 374-a (1), article V (a), occurs. Thus, as in *Shaida W.*, the petitions must be reinstated and the matter remanded to Family Court for further proceedings.

■ Moreover, and quite apart from the fact that the requirements of the Interstate Compact have not been complied with, the petitions should not have been dismissed without a hear-

ing. Family Court Act § 1055 (b) (ii) mandates that a hearing be held before foster care is extended. While there is no similar requirement with respect to the dismissal of a petition for such extension, owing no doubt to a legislative bias in favor of keeping children with their parents, in *Matter of Ingrid R.* (209 AD2d 177), this Court held that it was an improvident exercise of discretion to dismiss a petition for an extension of foster care placement without a hearing to consider the child's best interests. (*See, Matter of John M.*, 78 AD2d 1006; *see also,* Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1055, at 446-447 [1983].)

Here, the petitions were dismissed without an inquiry as to the best interests of the children, who were living with their maternal grandmother for only a few days at the time the petitions were returnable. No information was yet available as to how they were adjusting to their new environment and as to whether their grandmother was willing and able to assume her broadened responsibilities. There was no investigation of respondent's whereabouts and whether she was cooperating in the plan to reunite her with the children or if that plan was still viable. The inquiries as to the mother are especially significant since with the dismissal of the petitions the mother can now legally demand return of the children, irrespective of whether her own situation has improved at all. (*See, Matter of Susan F.*, 59 AD2d 783, 784.)

■ Finally, the result reached here as a result of the dismissal of the petitions, that is, the discharge of the children to their maternal grandmother for an indefinite period of time, is an unauthorized disposition under the controlling statute. Family Court Act § 1052 (a) lists five dispositional alternatives in child protective proceedings: (1) suspending judgment in accordance with Family Court Act § 1053; (2) releasing the child to the custody of the parent or other person legally responsible in accord with Family Court Act § 1054; (3) placing the child, in accordance with Family Court Act § 1055, with, *inter alia,* a relative or other suitable person for a one-year period; (4) making an order of protection under Family Court Act § 1056; or (5) placing the respondent under supervision in accordance with Family Court Act § 1057.

The first, fourth and fifth alternatives are, on their face, inapplicable since a suspended judgment, order of protection or placement under supervision are not involved. The second alternative, release to the custody of a parent or "other person legally responsible" in accord with Family Court Act § 1054, is

also inapplicable. Pursuant to section 1054, a person "legally responsible" is one who had legal responsibility for the child "at the time of the filing of the petition." At the time of the filing of the extension of placement petitions, the Commissioner had legal custody of the children. (*See*, Family Ct Act § 1017 [2] [a] [ii]; 18 NYCRR 443.1 [d].) Thus, section 1052 (a) (ii)'s use of the term "person legally responsible" refers to the Commissioner, not to a kinship foster parent who had been approved by the Commissioner.

While the third alternative of Family Court Act § 1052 (a) authorizes placement with "a relative or other suitable person", such placement is limited to an initial period of one year, as are extensions of placement (Family Ct Act § 1055 [b] [i]), which, as already noted, require a hearing to consider, *inter alia*, the child's best interests and the respondent's compliance with the child services plan (Family Ct Act § 1055 [b] [iv] [A] [3]; [B]). Nothing in Family Court Act § 1055 authorizes the discharge of a child to a relative for an indefinite period of time, which was the effect of the court's dismissal of the extension of placement petitions.

Accordingly, the order of the Family Court, Bronx County (Marjory D. Fields, J.), entered July 11, 1994, dismissing the extension of foster care placement petitions, should be reversed, on the law, without costs or disbursements, the petitions reinstated and the matter remanded for further proceedings.

KUPFERMAN, J. (concurring on constraint). It would seem that if a mother is disqualified by neglect and the child requests that she be sent to live with her maternal grandmother who accepts her, we have a satisfactory solution, as found by the experienced Family Court Judge, to a family problem and government surveillance is no longer required.

Instead, we have a bureaucratic morass perpetuated and enhanced by the courts which requires, at public expense of course, that proceedings continue.

ELLERIN, RUBIN and ASCH, JJ., concur with SULLIVAN, J. P.; KUPFERMAN, J., concurs on constraint in a separate opinion.

Order, Family Court, Bronx County, entered July 11, 1994, reversed, on the law, without costs and without disbursements, the petitions reinstated and the matter remanded for further proceedings.