◼ In the Matter of FRANCES WILLIAMS, Petitioner, v MARY E. GLASS, as Social Services Commissioner of the State of New York, et al., Respondents. [664 NYS2d 792] —Determination of respondent Commissioner of the State Department of Social Services dated November 24, 1995, which denied petitioner's application for foster care payments for three children in her custody since July 30, 1988, unanimously annulled, and the petition in this proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [David Saxe, J.], entered July 15, 1996) granted, without costs or disbursements.

The three children were removed from their parents' home and placed in foster care in November 1986. By order of Family Court, Bronx County (Irene Duffy, J.), entered on or about January 29, 1987, the children were placed in the custody of the municipal respondent. In April 1987, municipal respondent's case worker completed a Reassessment and Service Plan Review evaluating the six-month placement in foster care. In view of the parents' request, and the petitioner's acquiescence, that the children be placed with petitioner, the children's paternal grandmother, the municipal respondent took steps to achieve the Plan's goal of "reunit[ing] the children with their paternal grandmother in North Carolina." The Interstate Compact Placement Request (Social Services Law § 374-a) was completed in connection therewith. Petitioner then took custody of the children in May 1987 for a term of foster care to expire on July 29, 1988.

In August 1988, a second six-month review was prepared, indicating that the children resided in the custody of petitioner in Rowland, North Carolina. The report stated as a Permanency Planning Goal the discharge of the children to a relative, and noted that they were staying with their grandmother. Since the father's paternity had not yet been established, resulting from his lack of cooperation, the placement was not defined to be kinship foster care. Because the children were residing with a relative, and were not to be removed thereafter to foster care, the investigation was closed. Thereafter, the Department of Social Services (DSS) took no steps to ascertain the children's whereabouts, or to finalize the nature of their placement. Nor did it provide petitioner with foster care payments.

Petitioner then sought DSS funds for foster care payment. After the June 1994 fair hearing, the Administrative Law Judge (A.L.J.) directed the Department to provide foster care payments for the period from May 29, 1987, when petitioner took custody under DSS auspices, until July 29, 1988, when her foster care status lapsed. When DSS denied having or retaining custody of the children at any time thereafter, additional funding was denied, and petitioner filed a second petition seeking payments for the subsequent period. After a second fair hearing in November 1995, the A.L.J., noting that no extension had been filed by DSS for foster care placement with petitioner beyond July 29, 1988, that no voluntary placement agreement had been signed by the mother or any other authorized person and that the mother's parental rights had been terminated, determined that the children's foster care placement had been automatically terminated on July 30, 1988. Thus, the A.L.J. held that the agency appropriately denied petitioner foster care payments for the three children after July 30, 1988.

Pursuant to the Interstate Compact on the Placement of Children (Social Services Law § 374-a), a State that places a child in out-of-State foster care must retain jurisdiction sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child, until the child is adopted, reaches the age of majority, becomes self-supporting, or is discharged with the concurrence of the appropriate authority of the receiving State (*Matter of H. M. Children*, 217 AD2d 164). The statute has two purposes: to assure that the placement will be in the child's best interest, and to preclude the sending State from exporting its foster care responsibilities to a receiving State (*supra*). In the present case, the children were not adopted, did not reach their majority and were not self-supporting. The only person who could be legally responsible in this case remained the Commissioner of Social Services (*Matter of H. M. Children, supra*). The discharge to a relative, in this case the grandmother, was not authorized under New York law. The children legally remained under custodial control of DSS pursuant to the Family Court order, so that the voluntary "discharge" to a relative in this case was an insufficient basis to terminate DSS's responsibilities. Rather, as the "sending agency," DSS retains an ongoing supervisory as well as financial responsibility for the care of children over whom it asserts custody (*Matter of Shaida W.*, 85 NY2d 453; *Matter of H. M. Children, supra*).

The fact that its inaction in failing to file the Family Court

petition for review of the children's placement resulted in the lapse of the children's placement in foster care neither extends, nor necessarily terminates, the extant placement order; nor does it relieve DSS from its responsibility for foster care payments (*Matter of Annie M. v Dowling*, 226 AD2d 291, *lv denied* 88 NY2d 810). In similar situations, we have found that "[t]he fact that these relatives may have been unaware of the effect of the failure to initiate formal proceedings * * * is understandable" (*Matter of Rodriguez*, 89 AD2d 534, 535; *see also, Matter of Annie M. v Dowling*, *supra*). Despite the notation in its own records that petitioner's foster care status had been changed to voluntary, no notice of such was given to petitioner, so that her right to DSS foster care payments continued until formal termination.

Since DSS previously had found petitioner qualified to act as a foster parent, her continued custody of the children as a foster parent would be consistent with their best interests, requiring funding consistent with the continued status. For the reasons stated above, we annul the determination and grant the petition. Concur—Wallach, J. P., Nardelli, Tom, Mazzarelli and Colabella, JJ.