Matter of Rodriguez v Johnson (2004 NY Slip Op 50130(U))

[*1]

Matter of Rodriguez v Johnson

2004 NY Slip Op 50130(U)

Decided on February 26, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 26, 2004

Supreme Court, New York County
In the Matter of AROLINDA RODRIGUEZ, Petitioner,
against
JOHN A. JOHNSON, as Commissioner of the New York State Office of Children and Family Services, WILLIAM C. BELL, as Commissioner of the New York City Administration for Children's Services, BRIAN J. WING, as Commissioner of the New York State Office of Temporary and Disability Assistance, THE NEW YORK STATE OFFICE OF CHILDREN'S AND FAMILY SERVICES, THE ADMINISTRATION FOR CHILDREN'S SERVICES, and THE NEW YORK STATE OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE, Respondents.
Index No. 111431/03

Shirley Werner Kornreich, J.
I. FACTUAL AND PROCEDURAL BACKGROUND:
A. Facts:
Petitioner Arolinda Rodriguez ("petitioner" or "Rodriguez") has brought this petition to challenge so much of a Decision, dated March 14, 2003, following a Fair Hearing, as denied her foster care benefits for the period December 19, 1988 through October 28, 1998.
It is undisputed that by order of the Family Court, Bronx County, dated December 20, 1984, V. Q. ("V."), dob September 18, 1984, was adjudged a neglected child and placed in the custody of the Commissioner of Social Services for a twelve-month period. Respondents (hereafter, "respondents" or "the Agency") placed V., at the age of three months, in Rodriguez's care on or around December 20, 1984. Thereafter, the Family Court extended V.'s placement for four consecutive one-year periods, with the last extension going into effect on December 19, 1987. However, after December 19, 1988 no further extensions of V.'s placement were sought by the respondents, and the Agency thereafter failed to seek or obtain approval from the Family Court for either a further extension for V. or for her discharge from foster care.
On October 10, 1991, Rodriguez requested assistance from the Agency in the adoption of V. Although the Agency determined that V. was well provided for in Rodriguez's care, and recommended that the adoption go forward, it is not clear what became of this application.
Petitioner claims that she was the foster parent for V. Q. from December 1984 until [*2]October 28, 1998, when she at length became the child's legal guardian.[FN1] During this fourteen year period, however, petitioner received no foster care payments, no written notice of denial of payments, and no written notice of revocation of the foster care relationship.[FN2] At all times the Agency's records reflect that it considered Rodriguez to be V.'s foster mother and that it approved of V.'s placement with Rodriguez.
B. Procedural history:
1. First Article 78 Proceeding:
In April 2000, petitioner requested a Fair Hearing on respondents' failure to provide foster care payments. After a Fair Hearing (FH#3315616Y) was held before an Administrative Law Judge, the Commissioner of the New York State Department of Social Services issued a Decision, dated October 19, 2000, denying petitioner's application for reimbursement for the entire period on the ground that her request for a hearing had been untimely in that Rodriguez had failed to request a Fair Hearing within 60 days of the denial of payment.
Petitioner then brought a CPLR Article 78 proceeding in Supreme Court, New York County, asking the Court to reverse and annul respondents' determination and direct respondents to hold a hearing for the purpose of calculating the appropriate reimbursement to be paid to petitioner. Upon its review of the record of the Agency proceedings, the Supreme Court, New York County (Friedman, J.) noted, inter alia, that Rodriguez had never (so far as the evidence reflected) received any notice denying her request for foster care benefits, with its instructions on how to seek a Fair Hearing/file an appeal  even though such a notice was required to be served upon a discharged foster care giver by Social Services Law §22(12). In any event, Justice Friedman went on, the Courts have "in appropriate circumstances" routinely permitted foster parents to request Fair Hearings to appeal underpayment or nonpayment of foster care benefits beyond the statutory 60-day period, "and, in some cases, years after the foster care services had been provided." In addition, the Court ruled that the record was inadequate to determine whether or not Rodriguez was entitled to foster care benefits from 1984 up until the time when she became V.'s legal guardian in October 1998 (at which point she became disqualified for foster care benefits) and annulled the Commissioner's determination to the extent of directing a new hearing on petitioner's claim for foster care benefits for that period.
2. Second Article 78 Proceeding:
Pursuant to the Court's Order, a second Fair Hearing (#FH#3690247H) was held before Administrative Law Judge Douglass C. Alvarado on behalf of respondent New York State Office of Temporary and Disability Assistance ("OTDA"). At the time of this hearing, V. was 17-18 years old and had been with Rodriguez for all but the first three months of her life. The Commissioner's Designee issued an 11-page Decision and Order on March 14, 2003.
The Commissioner's Designee found that Rodriguez was not a relative of V.'s, as respondents had argued, although she was a family friend as well as the godmother of another of [*3]the eight Q. children.[FN3] The Commissioner's Designee noted that this information was contained in the records of an Agency home visit conducted on December 6, 1984, with a view to licensing Rodriguez and her home for V.'s foster placement there. Said records indicated that there was no indication that Rodriguez's home was in any respect unsuitable for V.'s placement there. Id.
In addition, the Commissioner's Designee noted that Rodriguez

had been licensed by Kennedy Child Study Center for two handicapped foster children in her home. The Agency referred the matter for licensing of [Rodriguez's] home for V. Q. to the New York Foundling Hospital. New York Foundling Hospital declined to pursue the licensing matter because [Rodriguez] was already licensed by another agency. The Kennedy Child Study Center was unable to license [Rodriguez's] home for V. because she was not a handicapped child and they only licensed homes for handicapped children at that time. However, a home study of [Rodriguez's] home was conducted by the Agency in December 1985, January 1986 and February 1986. The Agency recommended the foster care licensing of [Rodriguez's] home and adoption of V. Q. by [Rodriguez]. The record establishes that even in 1987 the Agency was still working for placement in a foster care agency and assuring [Rodriguez] that her home would soon be licensed. The Agency's progress notes and the Uniform Case Record consistently refer to [Rodriguez] as the 'foster parent' of V. Q. Therefore, the Agency's contention that [Rodriguez] had no expectation of receipt of foster care benefits for V. Q. is without merit.
Id. at pp. 7-8.
Further, the Commissioner's Designee ruled that the evidence did not support the conclusion that Rodriguez had ever agreed to provide "free" home care for V., since the record reflected that Rodriguez did not have the means to support V. without, e.g., Public Assistance benefits. In addition, the Commissioner's Designee found that Rodriguez "consistently sought foster boarding home status for V." Id. at 8.
No credit was given by the Commissioner's Designee to the Agency's suggestion that
Rodriguez's home was too "overcrowded" to qualify for licensing. Rather, s/he found:
Inasmuch as the Agency approved the housing situation for two other foster
children, for whom [Rodriguez] was licensed as a foster boarding home provider,
it is disingenuous for the Agency to argue that [Rodriguez's] home could not
have been certified due to overcrowding with regard to V. Q.
Id. at 8.
Thereafter, the Commissioner's Designee found that under successive Orders of the Family Court, V. had been remanded to the custody of the Commissioner of Social Services from October 1984 through December 19, 1988, during which period the Agency had "boarded" V. [*4]with Rodriguez. Because the Agency was not relieved of its responsibility to provide foster care maintenance payments for the support of children who have been remanded to a home which for some reason has not been certified or licensed as a foster boarding home, respondents were directed to pay Rodriguez for her care of V. between October 1984 and December 19, 1988. Id. at 8-9.
However, the Commissioner's Designee was compelled to disagree with Rodriguez's argument that "even in the absence of an order of the Family Court extending the placement of V. with the Commissioner of Social Services, the Agency is responsible for payment of foster care maintenance payments for V. until [Rodriguez] was appointed her legal guardian in October 1998." The Designee ruled,

pursuant to Section 1013 of the Family Court Act, the Family Court has exclusive original jurisdiction over proceedings alleging the abuse or neglect of a child under Article 10 of the Family Court Act. There is no authority either in State Law or Regulations which permit determinations regarding custody matters by means of the administrative hearing process. In the absence of an order of the Courts directing retroactive placement of V. Q. with the Commissioner of Social Services, there is no provision in the Regulations authorizing payment of foster care benefits to [Rodriguez] for the period from December 19, 1988 through October 28, 1998.
Id. at 9-10.
The Commissioner's Designee therefore reversed so much of the Agency's prior determination as refused to provide Rodriguez with foster care benefits on V.'s behalf for the period December 1984 through December 18, 1988, but affirmed that portion of the Agency's decision which had denied benefits to Rodriguez from December 19, 1988 through October 28, 1998. Id. at 10.
Rodriguez then commenced the instant Article 78 proceeding, challenging only so much of the Commissioner's Designee's determination as denied her foster care benefits on V.'s behalf from 1988-1998.
II. DISCUSSION:
A. The Court defers to the Commissioner's Designee's findings of fact and application of the relevant law:
1. 1984-1988:
In bringing the instant petition, Rodriguez invokes CPLR 7803(3), arguing specifically that the Commissioner's Designee's decision was "affected by an error of law" in that, because the Agency never formally discharged V. from custody, it perforce retained financial responsibility for her care when it (negligently) allowed her official custodial status to lapse in 1988. Under the requirements of the FCA, a proper discharge from the "custody" of the Commissioner can be accomplished only when the Agency seeks and obtains approval from the Family Court therefor, holds a discharge planning conference, formulates a discharge plan, and ensures that adequate financial and supportive services are in place for the child. See Matter of H./M. Children, 217 A.D.2d 164 (1st Dept. 1995); FCA §1052-1057. According to the case law cited by the petitioner, a foster parent whose status changes from authorized foster parent to [*5]"voluntary care giver" because of the lapsing of a placement order based upon the failure of DSS to file the requisite 12-month mandatory petition in Family Court for placement review, the placement order does not automatically terminate. Particularly where the care giver is not officially notified of her change in status, she retains her right to receive DSS foster care payments until formal termination is effectuated by the Agency. See, e.g., Matter of Williams v. Glass, 245 A.D.2d 66 (1st Dept. 1997) (agency's "inaction in failing to file the Family Court petition for review of the children's placement [which] resulted in the lapse of the children's placement in foster care neither extends, nor necessarily terminates, the extant placement order; nor does it relieve DSS from its responsibility for foster care payments"; and "[d]espite the notation in its own records that petitioner's foster care status had been changed to voluntary, no notice of such was given to petitioner, so that her right to DSS foster care payments continued until formal termination"; and "[s]ince DSS previously had found petitioner qualified to act as a foster parent, her continued custody of the children as a foster parent would be consistent with their best interests, requiring funding consistent with the continued status"); Matter of Annie M. v. Dowling, 226 A.D.2d 291 (1st Dept. 1996), lv. denied 88 N.Y.2d 810 (1996) (same);[FN4] Matter of H.M. Children, supra (child can only be discharged from DSS custody following, inter alia, a hearing at which the child's best interest is reviewed).
The respondents, however, point out that the Commissioner's Designee's ruling that s/he lacked jurisdiction to order a retroactive payment of foster care benefits during years not covered by Family Court orders is not "affected by an error of law." This Court agrees. The Court also agrees with respondents' assertion that the Court must defer to the administrative fact-finder's assessment of the evidence, and that it may not substitute its own interpretation of the evidence for that of the agency. See Berebhaus v. Ward, 70 N.Y.2d 436 (1987); Matter of Bullock v. State of New York Department of Social Services, 248 A.D.2d 380, 381-382 (2d
The Commissioner's Designee, however, was in accord with petitioner regarding the law applicable to reimbursement of a foster parent whose "certification" has been allowed by the Agency to lapse. Consequently, as the Commissioner's Designee's determination regarding the award of foster care benefits to Rodriguez for the years 1984-1988 was not affected by an error of law, it will not be disturbed.
2. 1988-1998:
The Commissioner's Designee refrained from extending his/her directive from 1988 until the date of guardianship  or October 29, 1998  only because s/he lacked the authority to do so, citing the fact that no statute or regulation in New York empowers the administrative Agency to make "determinations regarding custody matters." As the Designee explained, under FCA §1013, "the Family Court has exclusive original jurisdiction over proceedings alleging the abuse [*6]or neglect of a child under Article 10 of the Family Court Act." Indeed, it would not be unfair to read the Designee's Decision as inviting "the Courts" to issue "an order ... directing retroactive placement of V. Q. with the Commissioner of Social Services." According to the Commissioner's Designee, should such a retroactive Order be issued, payment to Rodriguez by the Agency of the retroactive foster care benefits owed to her would be entirely proper.
3. Jurisdiction:
Although FCA §1013(a) provides that "the family court has exclusive original jurisdiction over proceedings under [Article 10] alleging the abuse or neglect of a child," "exclusive original jurisdiction" is defined in FCA §114 as follows:

When used in this act, "exclusive original jurisdiction" means that the proceedings over which the family court is given such jurisdiction must be originated in the family court in the manner prescribed by this act. The provisions of this act shall in no way limit or impair the jurisdiction of the supreme court as set forth in section seven of article six of the constitution of the state of New York.
Accordingly the Supreme Court enjoys a constitutionally guaranteed concurrent jurisdiction over any matter within the jurisdiction of the Family Court. See e.g., Matter of Renzulli v. McElrath, 286 A.D.2d 335, 336 (2d Dept. 2001) (Family Court and Supreme Court have concurrent jurisdiction over "child custody" issues); Vasquez v. Vazquez, 26 A.D.2d 701 (2d Dept. 1966) (Supreme Court has concurrent jurisdiction with Family Court to direct support for children in any appropriate action, whenever that issue may arise); Steven R.J. v. Nancy J., 117 Misc.2d 725 (1983) (Supreme Court has constitutionally guaranteed concurrent jurisdiction over any matter within jurisdiction of Family Court); Borkowski v. Borkowski, 90 Misc.2d 957 (1977) (Supreme Court may exercise every power of Family Court).
In light of its authority, and based upon the Commissioner's Designee's uncontroverted findings of fact and enunciation of the applicable law, this Court exercises its authority to issue an order retroactively awarding custody of V. Q. to the Commissioner of the Department of Social Services for the years 1988-1998. The Court further directs the Agency to pay Rodriguez foster care benefits for V.'s maintenance during that period, less Public Assistance benefits paid during 1988-1998 on V.'s behalf. See Matter of Claudio v. Dowling, 89 N.Y.2d 567 (1997) (foster care benefits are "reimbursements" to foster parent for expenses incurred in caring for foster child, and so may logically be paid after foster care has ended).
B. Statute of Limitations issue:
The respondent City argues that petitioner's demand for retroactive foster care benefits is time-barred. This issue constituted the ground upon which the Commissioner, following the first Fair Hearing, denied Rodriguez's demand for benefits. That Decision was reversed by Justice Friedman in her Decision and Judgment dated January 7, 2002, citing Matter of Claudio v. Dowling, supra; Matter of Greer v. Bane, 158 Misc.2d 486 (Sup. Ct., N.Y. County 1993), and Matter of Carter v. Bane, 159 Misc.2d 786 (Sup. Ct., N.Y. County 1993). The Court went on to conclude that the instant case was one where the "circumstances" were such that the "time bar" should not apply. It does not appear that any appeal was ever taken from this Order. Accordingly, Justice Friedman's ruling regarding the inapplicability of any time bar to petitioner's [*7]application is the "law of the case." See, e.g., Allcity Ins. Co. v. Eagle Ins. Co., 1 Misc.3d 41 (App. Term, 1st Dept. 2003) (inasmuch as parties had full and fair opportunity to litigate statute of limitations issue, court's determination that insurer's demand for arbitration was timely constituted "law of the case," and subsequent court order denying petition to vacate arbitrator's award dismissing claim for arbitration on statute of limitations grounds erroneously failed to abide by that determination).
C. The City's equitable objection:
The municipal respondent also objects that in order to qualify for benefits, foster parents must normally subject themselves to "supervision, restrictions, and constraints upon their lifestyles, daily activities and decisions relating to the foster child on whose behalf they receive benefits." See City's Verified Answer at p. 5. If Rodriguez is allowed to collect 1990-1998 benefits retroactively, according to this argument, she will receive money under a "foster parent" "contract" without having had to comply with any of the "concomitant obligations" normally required by the Agency.
While the Court is sensitive to the policy concerns at issue here, it is persuaded that this is not a case where the integrity of the Agency's system of foster care "controls" is seriously in jeopardy. Agency representatives supervised the Rodriguez household quite regularly on behalf of the two handicapped foster care children. Although V. herself was not the focus of the Agency's supervision in 1988 and thereafter, it is fair to say that the entire household was monitored quite closely. Moreover, the record is replete with reports on home visits and home studies conducted over more than a decade in which Mr. and Mrs. Rodriguez are consistently praised for their hard work and devotion to their five children; where the children (including V.) are described as well fed, well dressed, happy, lively, and doing well in school; where the family apartment is characterized as "well furnished and immaculate"; and where, repeatedly, there are entries such as: "SSC is, without any hesitation or doubt, recommending licensing for Mrs. Rodriguez." See Exhibit F to City respondents' Answer. A serious examination of the "equities" does not favor respondents. Accordingly it is
ORDERED that the petition is granted to the extent of affirming the determination of the Commissioner's Designee dated March 14, 2003, except to the extent that the determination held that petitioner was not entitled to foster care benefits from December 19, 1988 through October 28, 1998; and it is further
ADJUDGED and DECLARED that the infant V. Q. was placed with the Commissioner of Social Services during the period December 19, 1988 through October 28, 1998, and that petitioner Arolinda Rodriguez is accordingly entitled to payment of retroactive foster care benefits on V. Q.'s behalf encompassing that entire period, minus Public Assistance payments; and it is further
ORDERED that counsel shall serve and file a copy of this order with notice of entry on the Clerk of the Judicial Support Office (Room 311) for the purpose of arranging a calendar date for hearing and assignment of the within accounting of the foster care benefits due petitioner from respondents to a Special Referee for determination.
The foregoing constitutes the Decision, Order and Judgment of the Court.
Date: February 26, 2004
New York, New York
SHIRLEY WERNER KORNREICH
Decision Date: February 26, 2004
Footnotes

Footnote 1:V.'s natural mother, Migdalia Q., died on August 12, 1996. The whereabouts of the child's natural father, and if he is still alive, are unknown.

Footnote 2:Rodriguez did, however, receive Public Assistance benefits for V.

Footnote 3:It appears that all of the Q. children were ultimately taken in by relatives or put into foster care.

Footnote 4:Respondents argue that Annie M. is distinguishable because there the agency "continued to make foster care payments," so that petitioner was not alerted to her change in status when the Agency allowed the Family Court orders to lapse. Here, however, it is undisputed that the Agency had so bollixed up the paper work on V.'s case that Rodriguez was never properly reimbursed for her care, and so was not notified by, e.g., a discontinuance of checks that her "status" had changed. Rather, from the outset she had been promised a license and payments, but throughout her care of V. she received no license and no payments.