OPINION OF THE COURT
 

 Bellacosa, J.
 

 This case implicates the scope of Family Court’s authority
 
 *456
 
 to terminate New York State’s financial assistance, official custodial and over-all supervisory responsibilities with respect to five children placed in the temporary foster care of their maternal grandmother. They all moved to California in 1992.
 

 The legal question presented narrows to whether Family Court’s dismissal of petitions from the New York City Social Services Commissioner for extension of foster care placements, based solely on the recommendation of a California caseworker in that receiving State, violates the Interstate Compact on the Placement of Children (L 1960, ch 708; codified as Social Services Law § 374-a [1]).
 

 We conclude that it does and that an authorized "discharge” of New York’s jurisdiction was not effected under Social Services Law § 374-a (1), article V (a). We further conclude that Family Court’s consequent severance of New York’s responsibility for these children does not satisfy the safety net protections of article V (a) of the Interstate Compact (Social Services Law § 374-a [1], art V [a]). Since none of the "discharging” events specified by the statute occurred, Family Court lacked a basis to terminate New York’s jurisdiction and jettison the responsibility for these children
 
 (see,
 
 Social Services Law § 374-a [1], art V [a]).
 

 In 1989, petitioner New York City Commissioner of Social Services commenced neglect proceedings on behalf of Shaida W., Kamar S., Asha W., Alyssa W., and Maila W. Family Court, Bronx County, found their mother, respondent Frances W., guilty of neglect based on her drug use. The Family Court also ordered the children placed in the Commissioner’s care and custody for up to 18 months pending the mother’s completion of a residential drug treatment program. The Commissioner subsequently placed the children in foster care with their maternal grandmother, Alma W., who lived in the Bronx at that time.
 

 In 1990, respondent gave birth to another child, Keenan W., who tested positive for cocaine. New neglect petitions were filed. After making new findings of neglect in 1991, Family Court extended the placement of the five children with the petitioner Commissioner for 12 months. Keenan W. was discharged to Alma W. in July 1992 and is not involved in this appeal.
 

 In January 1992, Alma W. moved to San Diego, California. The Commissioner officially authorized the children to remain with Alma W. in California as New York protected foster
 
 *457
 
 children. The San Diego Department of Social Services child welfare authorities undertook local supervision subject to the legal responsibility of the New York authorities. The California caseworker was required to report to a New York City Child Welfare Administration caseworker
 
 (see,
 
 NY City Child Welfare Admin Report to Judge Weinstein, at 1 [July 30, 1992]).
 

 In April 1992, when Family Court found grounds for permanent neglect, it extended placement for another 12 months and ordered the Commissioner to file a petition for termination of parental rights within 90 days. A 90-day report, prepared by the New York City Child Welfare Administration caseworker pursuant to Family Court Act § 1055 (b) (vi), noted that steps to initiate termination of the mother’s parental rights had begun. The report added that, according to a San Diego caseworker report, the mother had also moved to San Diego and appeared to be making progress towards rehabilitation.
 

 A March 1993 letter to the New York City caseworker from the San Diego caseworker described the improving condition of the mother and "recommend[ed]” that New York "terminate dependency over the minors” based upon the mother’s alleged willingness to resume caring for the children (County of San Diego Dept of Social Servs Letter to NY City Child Welfare Admin [Mar. 15, 1993]). That same month, New York City’s Commissioner filed petitions for extension of placements for the five children, stating that the children would need continued services and support from New York until their mother was ready to resume care or until their grandmother, Alma W., adopted them.
 

 At a March 31, 1993 hearing on the petitions before Family Court, the New York City caseworker recommended a 12-month extension. This recommendation was based on further conversations with the San Diego caseworker, which raised questions concerning the mother’s ability and willingness to undertake the care of the five children. Contrary to the New York City caseworker’s recommendation, the Family Court indicated its preference that the proceedings be terminated and that New York State’s jurisdiction be relinquished. Family Court relied substantially on the San Diego caseworker’s recommendation that New York conclude its role over the children, since "the family” was in California. The Family Court then adjourned the proceedings until April 12, so that
 
 *458
 
 the Law Guardian might follow up with the San Diego caseworker.
 

 At the April 12, 1993 hearing, the court dismissed the petitions, notwithstanding the Law Guardian’s insistence that long-term planning for the children had not been completed and that failure to extend the placements would be contrary to the children’s best interests. Family Court commented that it was "ridiculous” for New York to be paying benefits for individuals who had been residing in another State for more than two years. The court further opined that should the family need public benefits, it could apply in California.
 

 The Law Guardian obtained a stay of the Family Court order from the Appellate Division and filed an appeal. Petitioner Commissioner did not appeal separately, but filed an affirmation ratifying the Law Guardian’s position. Assigned counsel for the respondent mother initially filed a brief supporting the Family Court determination that the children should be discharged from foster care. That brief was later withdrawn with an indication that the mother did not want the children discharged to her at that time. The Appellate Division affirmed, finding the limitations on termination under Social Services Law § 374-a (1), article V (a) inapplicable, by virtue of an exception in Social Services Law § 374-a (1), article VIII (a).
 

 We granted the Law Guardian leave to appeal to this Court from the Appellate Division order. The Commissioner again stands by the Law Guardian’s position on behalf of the children. The case is thus in the unusual procedural posture of having no one supporting the determinations of the courts below. Also, we take judicial notice that since the Appellate Division issued its determination, respondent mother’s circumstances appear to have deteriorated, as she has been incarcerated and must undergo another six-month drug rehabilitation program.
 

 The Interstate Compact (L 1960, ch 708), codified in Social Services Law § 374-a, was designed to promote cooperation among States in providing each child with "the maximum opportunity to be placed in a suitable environment * * * with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree [and type] of care” (Carrieri, Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 374-a, at 461-462;
 
 see also,
 
 Mem of Joint Legis Comm on Interstate Cooperation, Bill Jacket, L 1960, ch 708). The enacted Com
 
 *459
 
 pact was designed to give a receiving State opportunity to ascertain the circumstances of a proposed change of legal placement, thus promoting compliance with applicable requirements by a sending State for a child’s protection (Mem of Joint Legis Comm on Interstate Cooperation, Bill Jacket, L 1960, ch 708). One of the purposes behind the statute was to promote "appropriate jurisdictional arrangements for the care of the children involved” (Mem of Jud Conf of State of NY, Bill Jacket, L 1960, ch 708) and to put proper procedural safeguards into effect
 
 (see,
 
 Mem of Joint Legis Comm on Interstate Cooperation, Bill Jacket, L 1960, ch 708). The Interstate Compact was designed to prevent States from unilaterally "dumping” their foster care responsibilities on other jurisdictions.
 

 At issue here are article V (a) and article VIII (a) of the Interstate Compact, which prescribe, respectively, (1) the framework for the sending State’s continued responsibilities for a child sent elsewhere; and (2) exceptions to the applicability or continuance of the Interstate Compact’s limitations.
 

 Article V (a) of the Compact contains explicit conditions under which a sending State’s and agency’s responsibilities for a child may cease and be transferred. It provides, in pertinent part:
 

 "The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency’s state, until the child is adopted, reaches majority, becomes self-supporting or
 
 is discharged with the concurrence of the appropriate authority in the receiving state.
 
 * * *
 
 The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement”
 
 (Social Services Law § 374-a [1], art V [a] [emphasis added]).
 

 "Sending agency” is defined as a "party state, officer or employee thereof; a subdivision of a party state, * * * or other entity which sends, brings, or causes to be sent or brought any child to another party state” (Social Services Law § 374-a [1], art II [b]). "Receiving state” is defined as "the state to which a child is sent, brought, or caused to be sent or brought” (Social Services Law § 374-a [1], art II [c]).
 

 
 *460
 
 Article VIII (a) articulates exceptions to the strictures of the Interstate Compact. It specifies that the Compact shall not apply to "[t]he sending or bringing of a child into a receiving state by his [or her] parent, step-parent, grandparent, adult brother or sister, adult uncle or aunt, or his [or her] guardian and leaving the child with any such relative or non-agency guardian in the receiving state” (Social Services Law § 374-a [1], art VIII [a]).
 

 The controversy in this case, thus, splits into two interrelated inquiries: (1) whether article V (a) of the Interstate Compact is applicable, given that the children went to San Diego with their grandmother
 
 (see,
 
 Social Services Law § 374-a [1], art VIII [a]); and (2) whether the San Diego caseworker’s “recommendation” constitutes a “discharge[ ] with the concurrence of the appropriate authority in the receiving state,” which might qualify for relinquishment of New York’s supervisory and financial obligations towards these foster children.
 

 Regarding the first inquiry, we conclude that the limitations of the Interstate Compact are operative with respect to New York’s continuing role. The Appellate Division failed to appreciate that the children were not legally “sent” to California by their grandmother
 
 (see,
 
 Social Services Law § 374-a [1], art VIII [a]). The official custodian of these children was petitioner, Department of Social Services of New York City. It authorized the children to be “sent,” as that statutory word of art is used, to California with their grandmother. New York’s Department of Social Services alone is the “sending agency” within the meaning of the statute. When the children relocated to California, they were in the “custody” of the New York City Department of Social Services pursuant to a Family Court order
 
 (contrast,
 
 "guardianship]” under Social Services Law § 374-a [1], art VIII [a]). The Department of Social Services was the agency that was still responsible for their care, and it authorized the transfer in cooperation with San Diego officials. The Department of Social Services, therefore, “sent” the children to California with their grandmother, as New York foster children, to be supervised by the San Diego Department of Social Services child welfare authorities. The California officials were legally obligated to report back to New York City child welfare authorities. Consequently, the Compact applies to the relocation at issue here and protects these foster children.
 

 As to the second prong of the problem, Family Court erred in the substantive termination of New York’s jurisdic
 
 *461
 
 tian over these children. Social Services Law § 374-a (1), article V (a) expressly provides that only upon the occurrence of specified events will the sending State be deemed released from responsibility — financially and in ultimate supervisory respects — for its foster children. The pertinent triggering event at issue here — concurrence by the appropriate authority —was never achieved. An informal “recommendation” from a caseworker in the receiving State, with respect to which the caseworker later also equivocated, cannot serve as the official authorized concurrence contemplated by the statute. This recommendation was never ratified by the responsible officials of the California child welfare agency, and California never officially accepted responsibility for these children. These five children were thus placed in a bureaucratic limbo with New York’s relinquishment and California’s nonacceptance. The Compact does not allow that crevice to be carved and instead builds a bridge across such a divide.
 

 Allowing the Appellate Division’s affirmance of Family Court’s determination to stand in this case would transgress and undermine the objectives of the Interstate Compact to (1) ensure adequate and maximum opportunity of care for children; (2) promote cooperation between States by providing receiving States with complete information and a full opportunity to assess the situation before deciding whether to undertake the responsibility
 
 (see,
 
 Mem of Joint Legis Comm on Interstate Cooperation, Bill Jacket, L 1960, ch 708); and (3) preclude sending States from “dumping” their responsibility for children on receiving States without a legally reliable authentication chain
 
 (see,
 
 Compact Administrator’s Manual, at 3.90).
 

 We have considered the other arguments and conclude that they are without merit under the circumstances presented in this case.
 

 Accordingly, the Appellate Division order should be reversed, without costs, and the petitions for the extension of foster care placements should be reinstated and remitted to Family Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order reversed, without costs, petitions reinstated and remitted to Family Court, Bronx County, for further proceedings in accordance with the opinion herein.