Matter of Emmanuel B. (Lynette J.) (2019 NY Slip Op 05640)





Matter of Emmanuel B. (Lynette J.)


2019 NY Slip Op 05640


Decided on July 16, 2019


Appellate Division, First Department


Webber, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 16, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Judith J. Gische
Troy K. Webber
Marcy L. Kahn
Jeffrey K. Oing, JJ.


9122 

[*1]In re Emmanuel B., Nonparty Appellant, A Child Under Eighteen Years of Age, etc., Administration for Children's Services, Petitioner-Respondent, Lynette J., Respondent. 
Andrell B., Nonparty Respondent, Lawyers for Children, Inc., and the National Association of Counsel for Children, Amici Curiae.



Emmanuel B. appeals from the order of the Family Court, Bronx County (Alma M. Gomez, J.), entered on or about March 5, 2018, which remanded his care and custody to the Administration for Children's Services.




Dawne Mitchell, The Legal Aid Society, New York (Claire V. Merkine of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (MacKenzie Fillow and Claude S. Platton of counsel), for Administration for Children Services, respondent.
NYU School of Law Family Defense Clinic, Washington Square Legal Services, New York (Christine Gottlieb and Amy Mulzer of [*2]counsel), for Andrell B., respondent.
Mayer Brown LLP, New York (Allison Stillman of counsel), and University of South Carolina School of Law, Columbia, SC (Josh Gupta-Kagan of counsel), for amici curiae.



WEBBER, J.


In this appeal, we are asked to determine a matter of first impression for this Court, that is, whether the Interstate Compact for the Placement of Children (ICPC), codified in Social Services Law § 374-a, applies to out-of-state noncustodial parents. For the reasons stated below, we find that the ICPC does not apply to those parents.
On October 2, 2017, the Administration for Children's Services (ACS) filed a petition alleging that Lynette J. (mother) had neglected two-year-old Emmanuel (child), born November 29, 2015, by failing to properly feed, bathe, and care for him, causing the child to become underweight and malnourished. The petition further alleged that the mother slapped and bit the child, and left him unsupervised for long periods of time.
The child, who had been residing with the mother at a New York City Department of Social Services facility, was subsequently removed from the mother's care and placed in the custody of ACS. ACS directly placed the child in the home of his paternal aunt. On or about January 10, 2018, nonparty Andrell B. (father), who resided in New Jersey, filed a petition for custody of the child. The Family Court denied custody, due to the father's residence in New Jersey, but ordered that the father have liberal visitation with the child.
On January 26, 2018, the father filed an order to show cause, seeking an order to have the child immediately released into his care. According to the father, he had resided with the mother and the child for the first six months of the child's life, and had visited the child every weekend after he and the mother separated.
On February 7, 2018, the parties appeared in Family Court. ACS conceded that it did not have any concern about the child residing with the father in that it had no reason to believe that the father was unfit or abusive or that he posed any imminent harm to the child. However, ACS stated that it believed that as the father resided in New Jersey, compliance with the ICPC was mandatory and any placement was predicated on ICPC approval [FN1]. The Family Court denied the father's application and issued an order remanding the care and custody of the child to the Commissioner of Social Services.
The court found that the ICPC process had to be completed and the placement approved. In its written decision, dated February 26, 2018, the court concluded that the ICPC process had to be completed and the placement approved prior to granting the father custody as the child was in the legal custody of the Commissioner of Social Services, and subject to the continuing jurisdiction of Family Court. According to the court, the father "as a non-custodial, non-resident parent, does not have custody or possession of the child as a matter of parental right" and "requires parental authority to be conferred on him by the state."
By subsequent order, entered March 5, 2018, the court remanded the child to the care and custody of ACS. By a separate order entered the same date, the court allowed the child to be sent [*3]to stay with the father on a 29-day ICPC-sanctioned visit, after which time the father was required to return the child to New York to be placed in foster care pending completion of the ICPC. Respondent filed the instant appeal, arguing that the ICPC does not apply to out-of-state noncustodial parents but for "placement in foster care or as a preliminary to a possible adoption" (Social Services Law § 374-a, Article III[a]). The remand order has been stayed by a Justice of this Court pending determination of the appeal.
ACS informs this Court that while the appeal was pending, the New Jersey authorities visited the father's home, interviewed the father and his girlfriend with whom he cohabited, and conducted background checks on both of them. Neither the father nor his girlfriend had criminal records in New Jersey, nor were they the subject of any child protective complaints.
Accordingly, the New Jersey authorities determined that the father's home was safe for the child, and approved the placement. ACS asserts that once it submitted the paperwork, the father was approved within three months.
Preliminarily, ACS argues that since the ICPC has been complied with, and the placement approved, resulting in the child now residing with the father in New Jersey, this Court should dismiss the appeal as it has been rendered moot.
"In general an appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment" (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]). However, an exception to the mootness doctrine permits courts to preserve for review issues that share these three common factors: "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on and (id. at 714-715).
This appeal meets the above criteria. As ACS concedes, this is an issue that is most likely to recur. Indeed, in Matter of Devin P.(__ AD3d __, 2017 NY Slip Op 91762[U] [1st Dept 2017]), a case similar to the instant matter, this Court dismissed two perfected appeals as academic because, during their pendency, but before they were decided, a final order of custody was granted to the father, and the child was released into his care. The circumstances caused the issue to evade our review.
In addition, ambiguity clearly exists as to the applicability of the ICPC to an out-of-state noncustodial parent, as demonstrated by the decisions rendered by courts in New York and other states. Matter of Devin P., as discussed above, raised issues similar to those raised here, which were not addressed on the merits. A Bronx Family Court decision (Matter of Jadaquis B. [Sameerah B.], 38 Misc 3d 1212(A) [Fam Ct, Bronx County 2012]) found that the ICPC did not apply to nonrespondent out-of-state father; two Second Department cases, on the other hand, both concluded that the ICPC did apply to nonrespondent out-of-state parents (see e.g. Matter of Alexus M. v Jenelle F., 91 AD3d 648, 650-51 [2d Dept 2012]; Matter of Tumari W., 65 AD3d 1357, 1360 [2d Dept 2009]).[FN2]
Moreover, this appeal grapples with important issues, such as whether applying the ICPC in such a manner is contrary to the plain meaning and legislative history of the statute, and whether it conflicts with a parent's right to substantive and procedural due process, which warrant review by this Court. Accordingly, we find that the appeal raises issues that falls within an exception to the mootness doctrine.
The ICPC, codified in Social Services Law § 374-a, is a statutory agreement with the express purpose of fostering cooperation and communication between all 50 states so that children requiring placement in another state "shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care" (Social Services Law § 374-a, Article I). The ICPC's provisions are to be "liberally construed to effectuate the purposes thereof" (Social Services Law § 374-a, Article X).
With respect to the conditions of a child's placement in another state, Article III of the ICPC provides as follows:[FN3]
"(a) No sending agency shall send . . . into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this Article . . . .
"(b) Prior to sending . . . any child . . . into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice . . ." (emphasis added).
The ICPC does not apply to "[t]he sending or bringing of a child into a receiving state by his parent, step-parent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or non-agency guardian in the receiving state" (Social Services Law § 374-a, Article VIII).
Prior to its enactment, the legislature had adopted a complete prohibition of all out-of-state placements in an effort to prevent children from being sent out-of-state and into "undesirable labor," with the exception of placements with family members within the second degree of contiguity (see former Social Welfare Law § 371[12] and [14]).
There is no dispute that the ICPC was intended to provide children in need of foster and adoptive families with more possible placements across state lines. The purpose of the statute was twofold: to assure the placement would be in a child's best interests, and to preclude the "sending State from exporting its foster care responsibilities to a receiving State" (see Matter of Williams v Glass, 245 AD2d 66, 67 [1st Dept 1997]). Thus the ICPC was enacted to provide children in need of foster and adoptive families with more options, while still paying heed to concerns about the children's welfare.
There is also nothing in the language of the statute or the legislative history to indicate that the ICPC was ever intended to address any individual other than an out-of-state foster or adoptive parent. The language explicitly limits its applicability to out-of-state placements in foster care or as a preliminary to a possible adoption (see Social Services Law § 374-a). The [*4]limitation reflects the ICPC's purpose which was to provide "a uniform legislative framework for the placement of children across state lines in foster and/or adoptive homes" (Cong. Research Serv., Interstate Compact in the Placement of Children: ICPC [2003], [https://www.everycrsreport.com/reports/RL32070.html (last accessed, June 18, 2019)]).
Based on the plain language of Article III of the ICPC, the conditions for placement were expressly aimed at placements in foster care or adoptive settings. "[C]ourts are obligated to construe the statute so as to give effect to the plain meaning of the words" (Cole v Mandell Food Stores, 93 NY2d 34, 39 [1999]), which, here, would mean excluding parents from these conditions. While the ICPC makes an exception for a parent or relative who takes a child over state lines (see Social Services Law § 374-a, Art VIII), by limiting the purview of placement conditions in article III to foster care and adoptive situations, the ICPC clearly did not contemplate the issue before us, where an out-of-state parent is seeking custody.
In 2011, the Association of Administrators of the Interstate Compact on the Placement of Children (AAICPC), the official body charged with implementing the ICPC, amended Regulation 3(2)(a) to extend the statute's reach to include placements with out-of-state noncustodial parents.
Regulation 3, as amended effective October 1, 2011, states in pertinent part:
"2. Placement categories requiring compliance with ICPC: Placement of a child requires compliance with the [ICPC] if such placement is made under one of the following four types of placement categories:
"(a) Four types of placement categories . . .
3. Placements with parents and relatives when a parent or relative is not making the placement . . . (see https://aphsa.org/OE/AAICPC/ICPC_Regulations.aspx [last accessed, June 18, 2019] [emphasis added])."
The stated intent of the amendments to Regulation 3(2)(a) is to provide guidance in navigating the ICPC regulations and to assist its users in understanding which interstate placements are governed by, and which are exempt from, the ICPC (id.).
Thus the application of the ICPC to out-of-state parents is premised not on the statutory language of the ICPC, but on amendments made to Regulation 3, which were promulgated by the AAICPC in 2011. While there is no argument that the AAICPC had the authority to amend its regulations, "in exercising its rule-making authority an administrative agency cannot extend the meaning of the statutory language to apply to situations not intended to be embraced within the statute" (Matter of Society N.Y. Hosp. v Axelrod, 70 NY2d 467, 474 [1987] [internal quotation marks omitted]). Provided the adopted regulation is "consistent with the enabling legislation," it has "the force and effect of law" (Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254 [2004]).
We find that in amending Regulation 3 to specifically subject out-of-state parents to ICPC procedures, the AAICPC expanded the statute's reach in a way that was not only outside the statute's scope, but contravened the will of the legislature to provide more opportunities for children in need of placements. Thus, we find that Regulation 3 does not carry the force of law (see Weiss v City of New York, 95 NY2d 1, 4-5 [2000]). Regulation 3 is inconsistent with the stated purpose of the ICPC and improperly expands the statutory language to apply to situations not within the intended scope of the statute.
While this Court is mindful that the Second Department has held that the ICPC applies to [*5]a nonrespondent parent living outside of New York [FN4], we decline to follow its interpretation, because in our opinion it conflicts with the plain meaning of the statute and is in contravention of its legislative history. As a threshold matter, this line of cases relies on a fundamental misreading of the Court of Appeals decision in Matter of Shaida W. (85 NY2d 453 [1995]), where the Court applied the ICPC to a kinship foster care placement. There, the subject children had been removed from the custody of their mother following a finding of neglect. The New York City Commissioner of Social Services obtained custody and placed the children with their grandmother, who was a certified foster care parent and was subject to the governing regulations of a foster parent, including the receipt of subsidies. The grandmother ultimately moved to California, and the New York City Commissioner of Social Services authorized the children to remain with her; the San Diego Department of Social Services undertook local supervision of the children. The Court of Appeals extended the Commissioner's petitions to extend the children's placement, finding that the ICPC applied because the Commissioner retained legal custody of the children even after their move to California. Although the children resided in California, the placement was still seen as a foster care placement for which the commissioner had continuing responsibilities.
The Court in concluding that the ICPC was applicable, specifically observed that a purpose of the ICPC was to "prevent states from unilaterally dumping' their foster care responsibilities on other jurisdictions" (id. at 459). Here, the child's living situation with his father in New Jersey would not involve foster care or adoption.
Interpreting the statute as applying to a parent who happens to live outside of New York State also flies in the face of New York's policy of keeping "biological families together" (Nicholson v Scoppetta, 3 NY3d 357, 374 [2004] quoting Matter of Marino S., 100 NY2d 361, 372 [2003]). It is somewhat ironic that a statute with a stated purpose of providing more opportunities for children in need of placement would be construed to effectively prohibit the placement of a child with a natural parent.
We also reject ACS's argument that Family Court Act § 1017(1)(a) provides an independent statutory basis for implementing ICPC procedures with respect to a parent. After a child is removed from the home during an article 10 proceeding, this provision directs ACS to determine whether a nonrespondent parent is someone with whom the "child may appropriately reside" by performing background checks (Family Ct Act § 1017[1][a],[c][i]). However, the two are not necessarily related. There are other means to ensure a child's safety, such as directing a hearing or requesting courtesy background checks from the state where the nonrespondent parent resides. Furthermore, under Family Ct Act § 1017(3), once a child is temporarily released into a nonrespondent parent's care, the parent is required to submit to the Family Court's jurisdiction, and thus required to comply with the court's orders, whether to bring the child to court or to court-ordered visitation. In that vein, we reject ACS's argument that the ICPC comports with constitutional principles by protecting or prioritizing the rights of custodial parents, given that the Family Court still exercises control over the matter and can, among other things, make determinations regarding the child's best interests.
In recognizing fundamental constitutional principles of due process and protected privacy, New York courts have consistently held that the State "may not deprive a natural parent of the right to the care and custody of a child absent a demonstration of abandonment, surrender, persisting neglect, unfitness or other like behavior evincing utter indifference and irresponsibility to the child's well-being" (Matter of Marie B., 62 NY2d 352, 358 [1984]; Matter of Bennett v [*6]Jeffreys, 40 NY2d 543, 544 [1976]).
The burden of establishing a parent's fitness or other like extraordinary circumstances rests with "the party seeking to deprive the natural parent of custody" (Matter of Alfredo S. v Nassau County Dept. of Social Servs., 172 AD2d 528, 530 [2d Dept 1991], lv denied 78 NY2d 852 [1991]). Unless the Family Court has cause to believe a nonrespondent parent in another state might not be fit, or some other extraordinary circumstances exist, presupposing a parent is unfit pending completion of the ICPC infringes upon that parent's constitutional rights (Matter of Marie B., 62 NY2d at 358; Matter of Bennett v Jeffreys, 40 NY2d at 545).
Here, the father represented that he was gainfully employed in Manhattan, had suitable living arrangements, and had visited the child regularly since his birth. ACS did not offer any evidence to the contrary, and, in fact, stated on the record that it had no concerns about the child's placement with the father. But for the ICPC protocol, which reportedly can take months, or even years to complete, ACS suggested that the child would have been released to the father. Under these circumstances, we find that there was no evidence to warrant the delay in releasing the child to his custody. We further find that the delegation of the Family Court's parens patriae role to an ICPC administrator, who is empowered to decide the father's suitability as a placement without providing supporting evidence or the possibility of judicial review, also violates the father's right to procedural due process. Essentially, the ICPC permits a child to be denied placement or even later removed from a parent's home, at the sole discretion of an administrator, without offering any recourse to the parent. This bureaucratic barrier between the father and child infringes upon the father's substantive and procedural due process rights as a parent (see Matter of Marie B., 62 NY2d at 358-359; Matter of Bennett v Jeffreys, 40 NY2d at 544-545; Matter of Alfredo S., 172 AD2d at 529-530).
Finally, we acknowledge the arguments of the amici curiae, Lawyers for Children, Inc., and The National Association of Counsel for Children, who convincingly assert that, based on social science, medical research, and their "on the ground" experience, applying the ICPC to out-of-state parents - given the possibility that the process could keep a child in foster care, and apart from a loving, competent parent - harms children. There is no basis in the law to countenance this potential outcome.
Accordingly, the order of the Family Court, Bronx County (Alma M. Gomez, J.), entered on or about March 5, 2018, which remanded the care and custody of the subject child to the Administration for Children's Services, should be reversed, on the law and the facts, without costs, and the order vacated.
All concur.
Order, Family Court, Bronx County (Alma M. Gomez, J.), entered on or about March 5, 2018, reversed, on the law and the facts, without costs, and the order vacated.
Opinion by Webber, J. All concur.
Friedman, J.P., Gische, Webber, Kahn, Oing, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 16, 2019
CLERK



Footnotes

Footnote 1:The mother also opposed the father's application, stating that she feared not having visitation with the child and wanted to work toward reunification.

Footnote 2: States across the country are divided on the applicability of the ICPC to out-of-state parents, with numerous jurisdictions finding that parents are exempt from the compact (see e.g. In the Interest of C.R.-A.A., 521 SW 3d 893, 907 [Tex App 2017]; In re D.B., 43 NE 3d 599, 604 [Ind Ct App], transfer denied 41 NE 3d 691 [Ind 2015]; In re S.R.C.-Q., 367 P 3d 1276, 1282 [Kan 2016]). Others have applied the ICPC to out-of-state parents (see e.g. Arizona Dept. of Economic Sec. v Stanford, 234 Ariz 477 [2014]); Department of Children and Families v C.T., 144 So 3d 684 [Fla Dist App 2014]; Green v Division of Family Servs., 864 A2d 921, 927 [Del 2004]).

Footnote 3: "Placement" is defined as "the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution . . ." (Social Services Law § 374-a, Article II).

Footnote 4: Matter of Alexus M. v Jenelle F., 91 AD3d at 650-51; Matter of Tumari W., 65 AD3d at 1360.