# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 76
In the Matter of D.L.,
     Appellant,
    v.
S.B. et al.,
     Respondents.

Christine Gottlieb, for appellant.
James G. Bernet, for respondent Suffolk County Department of Social Services.
Lawyers for Children, Inc. et al.; New York City Administration for Children's Services,
amici curiae.

CANNATARO, Acting Chief Judge:

The Interstate Compact on the Placement of Children (ICPC or Compact) is an

agreement among the states to follow certain procedures in connection with sending

children across state borders "for placement in foster care or as a preliminary to a possible

- 1 -

adoption" (Social Services Law § 374-a [1] [art III] [a]). The issue raised on this appeal is whether the ICPC applies to out-of-state, noncustodial parents seeking custody of their children who are in the custody of New York social services agencies. We hold that it does not.

                                                I.

Petitioner father, a North Carolina resident, and respondent mother, a New York resident, are the parents of the subject child. In 2012, respondent Suffolk County Department of Social Services (DSS) removed the child from the custody of mother, who admitted neglecting the child, and placed the child in foster care. Father exercised his right to appear in the neglect proceeding and, in 2013, an application was made under the ICPC to North Carolina for the approval of father's home in that state as a suitable placement for the child. The relevant North Carolina authority denied the ICPC request. The child remained in foster care with the goal of reunification with mother and, according to father, he maintained contact with and continued to visit with the child. Thereafter, in 2017, father commenced these custody proceedings, arguing that it was in the child's best interests to award him sole custody. DSS argued that the child could not be placed with father in light of the North Carolina authority's 2013 refusal to consent to the placement.

Family Court dismissed father's petitions without conducting a hearing. The court held in pertinent part that the requirements of the ICPC applied to placement of the child with father, even though he is an out-of-state noncustodial parent, because the child was in the custody and care of DSS in New York. The court also rejected father's claim that the ICPC is unconstitutional to the extent that it purports to apply to a noncustodial parent's

petition for custody of that parent's child.  Father appealed.

The Appellate Division affirmed (183 AD3d 565 [2nd Dept 2020]), holding that Family Court properly determined that the ICPC applied because "the child was in the custody of DSS and . . . father resided in North Carolina" (*id.* at 566).  The Court concluded that the petitions for custody were correctly dismissed without a hearing inasmuch as the relevant North Carolina authority denied approval of father's 2013 ICPC request (*id.*).

We granted father leave to appeal (37 NY3d 901 [2021]) and now reverse.[1]

II.

The ICPC is an agreement among the 50 states, the District of Columbia, and the U.S. Virgin Islands.  It is a non-federal agreement and is "construed as state law" in each adopting state (*McComb v Wambaugh*, 934 F2d 474, 479 [3d Cir 1991]).  Governor Rockefeller approved New York's entry into the ICPC, which has since been codified in Social Services Law § 374-a (*see* Governor's Approval Mem, Bill Jacket, L 1960, ch 708).

The ICPC governs the "interstate placement of children" (Social Services Law § 374-a [1] [art I]) and "was designed to promote cooperation among [s]tates in providing each child with the maximum opportunity to be placed in a suitable environment with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care" (*Matter of Shaida W.*, 85 NY2d 453, 458

---

[1]  This appeal is now moot because, among other things, during its pendency, father surrendered his parental rights to the subject child in this case.  We nevertheless review the significant issue raised under the exception to the mootness doctrine (*see City of New York v Maul*, 14 NY3d 499, 507 [2010]; *Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715 [1980]).

[1995] [internal quotation marks, ellipsis, brackets, and citation omitted]). The Compact was further intended to provide a state receiving a child with a "full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child" (Social Services Law § 374-a [1] [art I] [b]) and to enable a sending state to "obtain the most complete information on the basis of which to evaluate a projected placement before it is made" (*id.* § 374-a [1] [art I] [c]). The ICPC also promotes "'appropriate jurisdictional arrangements for the care of the children involved'" (*Matter of Shaida W.*, 85 NY2d at 459, quoting Mem of Jud Conf of State of NY, Bill Jacket, L 1960, ch 708) and "was designed to prevent States from unilaterally 'dumping' their foster care responsibilities on other jurisdictions" (*id.*).

The ICPC provides at the outset that it applies when a state agency seeks to send children to a receiving state to be placed in foster care or for possible adoption. Specifically, article III of the ICPC provides:

> "(a) No sending agency shall send . . . into any other party state any child *for placement in foster care or as a preliminary to a possible adoption* unless the sending agency shall comply with each and every requirement set forth in this article . . .
>
> "(b) Prior to sending . . . any child . . . into a receiving state *for placement in foster care or as a preliminary to a possible adoption*, the sending agency shall furnish the appropriate public authorities in the receiving state written notice . . ." (emphasis added).

(Social Services Law § 374-a [art III] [a], [b]). "Placement," in turn, is defined as "the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution" (*id.* § 374-a [art II] [d]).

The Appellate Division Departments have disagreed regarding the applicability of the ICPC to noncustodial parents who reside outside New York. The Second Department has repeatedly applied the ICPC to out-of-state noncustodial parents, holding that "[w]here the custody of a child who is under the supervision of the Commissioner [of Social Services] is transferred to the custody of a parent or relative in another state, the provisions of the ICPC apply" (*Matter of Alexus M. v Jenelle F.*, 91 AD3d 648, 650-651 [2d Dept 2012]; *see Matter of Faison v Capozello*, 50 AD3d 797, 797 [2d Dept 2008]; *Matter of Tumari W. v Lynell W.*, 65 AD3d 1357, 1358-1359 [2d Dept 2009]; *Matter of Keanu Blue R.*, 292 AD2d 614, 614-615 [2d Dept 2002]). By contrast, the First Department has expressly declined to follow the Second Department's interpretation of the ICPC and, instead, has held that the ICPC "does not apply" to out-of-state noncustodial parents, reasoning that the plain language of the ICPC limits its application to placements in foster care or adoptive settings (*Matter of Emmanuel B. [Lynette J.],* 175 AD3d 49, 52 [2019], *lv dismissed* 34 NY3d 1036 [2019]). The Third Department has recently endorsed the First Department's approach, albeit in dicta (*see Matter of David Q. v Schoharie County Dept. of Social Servs.*, 199 AD3d 1179, 1181 n [3d Dept 2021], *lv denied* 38 NY3d 901 [2022]). We are now called on to resolve the disagreement regarding ICPC applicability to noncustodial parents.

III.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the [l]egislature" and, because "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the

language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin–Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998] [internal quotation marks and citation omitted]). Moreover, "where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]). "'Absent ambiguity the courts may not resort to rules of construction to [alter] the scope and application of a statute' because no such rule 'gives the court discretion to declare the intent of the law when the words are unequivocal'" (*Kuzmich v 50 Murray St. Acquisition LLC*, 34 NY3d 84, 91 [2019], *cert denied* ___ US ___, 140 S Ct 904 [2020], quoting *Bender v Jamaica Hosp.*, 40 NY2d 560, 562 [1976]).

By its terms, the ICPC governs the out-of-state "placement" of children "in foster care or as a preliminary to possible adoption" (Social Services Law § 374-a [1] [art III] [a] & [b]). The language of the statute thus unambiguously limits its applicability to cases of placement for foster care or adoption—which are substitutes for parental care that are not implicated when custody of the child is granted to a noncustodial parent. Indeed, applying the ICPC to noncustodial parents would be inconsistent with the statutory requirement that, when a child is placed pursuant to the ICPC, "[t]he sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement" (Social Services Law § 374–a [1] [art V] [a]). As the United States Court of Appeals for the Third Circuit observed, "[t]o construe the return of a child to [a] parent as a 'placement' within the Compact would result in the anomalous situation of imposing a financial obligation upon a sending state that supersedes parents' duty to support their

children" (*McComb*, 934 F2d at 480). In short, as many courts in other states have concluded, there is nothing in the statutory language to indicate that the ICPC was intended to apply to out-of-state parents seeking custody of their children and the statutory text confines application of the ICPC to children placed in foster care or preliminary adoptive homes (*see e.g. A.G. v Cabinet for Health and Family Services*, 621 SW3d 424, 432 [Ky 2021]; *In re R.S.*, 470 Md 380, 404, 235 A3d 914, 928 [2020]; *In re Emoni W.*, 305 Conn 723, 735, 48 A3d 1, 7 [2012]; *In re Alexis O.,* 157 NH 781, 787, 959 A2d 176, 182 [2008]; *Arkansas Dept. of Human Services v Huff*, 347 Ark 553, 563, 65 SW3d 880, 888 [2002]; *McComb*, 934 F2d at 481; *Matter of J. B.*, 310 Or App 729, 744, 489 P3d 598, 607 [Or Ct App 2021]; *Matter of B.L.P.*, 91 NE3d 625, 630 [Ind Ct App 2018]; *In re C.B.*, 188 Cal App 4th 1024, 1032, 116 Cal Rptr 3d 294, 299 [Cal Ct App 2010]).

Our decision in *Matter of Shaida W.* (85 NY2d 453 [1995]) does not compel a contrary conclusion. In that case, the question before the Court was whether the ICPC applied when children, who were in the care and custody of a New York social services agency, were taken to another state by their grandmother after the agency placed the children into temporary foster care with the grandmother. Although article VIII (a) provides that the ICPC does not apply to "[t]he sending or bringing of a child into a receiving state by [a] parent, step-parent, grandparent, adult brother or sister, adult uncle or aunt, or [a] guardian and leaving the child with any such relative or non-agency guardian in the receiving state" (Social Services Law § 374–a [1] [art VIII] [a]), we explained that "the children were not legally 'sent' to California by their grandmother" (*Matter of Shaida W.*, 85 NY2d at 460). Rather, "[t]he official custodian" of the children was the

"Department of Social Services of New York City," and it was the agency that "authorized

the children to be 'sent'" to California within the meaning of the statute (*id.*). That is, the

children were sent by a social services agency to a "kinship foster care placement" in

another state (*Matter of Emmanuel B.*, 175 AD3d at 58) and, as such, this Court concluded

that the ICPC applied (*Matter of Shaida W.*, 85 NY2d at 460-461). Here, in contrast,

placing a child with an out-of-state parent does not involve foster care or adoption and,

thus, *Shaida W.* does not control.

IV.

Our reading of the ICPC as being applicable only to placement of a child for foster

care or as a preliminary to adoption, and not to custody of a noncustodial parent, comports

with the intent reflected in the Compact's legislative history and the underlying statutory

purpose. "[N]othing in the language of the statute or the legislative history . . . indicate[s]

that the ICPC was ever intended to address any individual other than an out-of-state foster

or adoptive parent" (*Matter of Emmanuel B.*, 175 AD3d at 56 [citations omitted]; *see also*

Mem of Dept of Social Welfare, Bill Jacket, L 1960, ch 708, at 23 [explaining that the

ICPC was intended to regulate the sending of children out of state "for placement in foster

care" and "for the purpose of adoption"]; Budget Rep. on Bills, *id.* at 12 [observing that

the statute "would broaden the placement field and provide greater opportunity for the

placement in foster homes or adoption homes of the children in institutions"]). Further, an

interpretation of the ICPC as applicable to noncustodial parents would be inconsistent with

other components of New York's statutory framework governing child protection (*see*

*Matter of Jamie J. [Michelle E.C.]*, 30 NY3d 275, 284 [2017]), which overwhelmingly

reflects "the preeminence of the biological family" (*Matter of Michael B.*, 80 NY2d 299, 313 [1992]) and "embrace[s] a policy of keeping biological families together" whenever safely possible (*Nicholson v Scoppetta*, 3 NY3d 357, 374 [2004] [internal quotation marks omitted]; *see* Social Services Law § 384-b [1] [ii]).  In that regard, this Court has long acknowledged the Legislature's "fundamental social policy choice[,] . . . binding on this Court" to structure New York's foster care scheme around the right of parents "to the care and custody of a child, superior to that of others, unless the parent has abandoned that right or is proven unfit" (*Matter of Michael B.*, 80 NY2d at 308–09).[2]

We recognize that our interpretation of the ICPC conflicts with "Regulation 3" promulgated by the Association of Administrators of the Interstate Compact on the Placement of Children (AAICPC).  Specifically, the AAICPC—an entity comprised of officials designated by each member state to coordinate ICPC matters (*see* Social Services Law § 374-a [art VII])—amended Regulation 3 (2) (a) to "provide guidance in navigating the ICPC regulations and to assist its users in understanding which interstate placements are governed by, and which are exempt from, the ICPC" (American Public Human Services, ICPC Regulations, https://aphsa.org/AAICPC/Resources.aspx [last accessed, Oct 18, 2022]]).  Regulation 3, as amended effective October 1, 2011, states in pertinent part that compliance with the ICPC is required for "*Placements with parents and relatives* when

---

[2] This Court has also recognized that "[t]he State may not deprive a natural parent of the right to the care and custody of a child absent a demonstration of abandonment, surrender, persisting neglect, unfitness or other like behavior evincing utter indifference and irresponsibility to the child's well-being" (*Matter of Marie B.*, 62 NY2d 352, 358 [1984]; *see Matter of Bennett v Jeffreys*, 40 NY2d 543, 545-546 [1976]).

a parent or relative is not making the placement" (*id.* [emphasis added]).  However, in light of our conclusion that the relevant text of the ICPC unambiguously confines its application to foster care and preliminary adoptive homes, Regulation 3 (2) (a) is inconsistent with its enabling legislation and, therefore, could not be given effect (*cf. Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib*., 2 NY3d 249, 254 [2004] [an agency cannot adopt regulations that are "inconsistent with the statutory language or its underlying purposes"]; *see Matter of R.S.*, 470 Md at 404, 412  ["(A)ny regulation purporting to expand the application of the ICPC to out-of-state placements with a non-custodial, noncustodial parent is impermissible and will not be given the force of law"]; *Matter of Emoni W.*, 305 Conn at 740-742; *Matter of Alexis O.*, 157 NH at 787, 789; *Ark. Dept. of Human Servs.*, 347 Ark at 563; *McComb*, 934 F2d at 481-482).[3]

Although the ICPC does not apply to placement with a parent, the Family Court Act contains other effective means to ensure the safety of a child before awarding custody to an out-of-state parent.  Family Court retains jurisdiction over custody proceedings and has a broad array of powers under the Family Court Act to ensure a child's safety.  Among other things, Family Court can hold hearings and request courtesy investigations and reports from the local social service agencies or department of probation in order to make determinations regarding a child's best interests.  Additionally, rather than awarding an out-of-state parent full custody, Family Court Act § 1052 (a) provides for other dispositional options, including release to a parent with supervision.  Similarly, Family

---

[3] The parties here have not raised a challenge to the validity or the legal effect of AAICPC Regulation 3.

Court may grant a temporary order of custody or guardianship to a noncustodial parent (*see* Family Court Act § 1017 [2] [a] [i]; *see also* § 1055), which requires that a parent submit to Family Court's continuing jurisdiction and comply with the terms and conditions of the court's order—which may include making the child available for visits with social services officials (*see* Family Ct Act § 1017 [3]).  In such instances, the case remains on the court's calendar and the court maintains jurisdiction over the case until the child is discharged from placement and all orders regarding supervision, protection or services have expired (*see* Family Ct Act § 1088).

## VI.

In conclusion, giving effect to the clear language of the ICPC as codified in Social Services Law § 374-a, we hold that the ICPC does not apply to out-of-state noncustodial parents seeking custody of their children.  Accordingly, the order of the Appellate Division should be reversed, without costs, and the petitions reinstated.

Order reversed, without costs, and petitions reinstated. Opinion by Acting Chief Judge Cannataro. Judges Rivera, Garcia, Wilson, Singas and Troutman concur.

Decided October 25, 2022